IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| | : | NO. 19-373 |
| v. | : | |
| | : | |
| MYLES HANNIGAN | : | |
| | : | |

## MEMORANDUM

Defendant Myles Hannigan ("Hannigan") brings this *pro se* Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(l)(A)(i), contending that "extraordinary and compelling reasons" warrant a reduction of his sentence, including his "particular vulnerability" to the coronavirus ("COVID-19") based on his underlying health conditions.  ECF No. 29 at 1.  The government opposes Defendant's Motion for Compassionate Release based on a consideration of the 18 U.S.C. § 3553(a) factors, including "the danger that the defendant presents to the community, that he has only served four months of a 52-month prison sentence for his years of egregious criminal conduct, and that his medical conditions are well controlled with treatment in BOP custody."  ECF No. 30 at 1.

I. **BACKGROUND**

Defendant Hannigan owned and operated a company named Payroll Professionals, Inc., ("PPI") which small and medium-sized businesses hired to issue payroll checks to their employees and then remit the taxes due on those

1

wages to the federal, state, and local governments. ECF No. 1. Over a period of many years, Defendant Hannigan failed to properly forward his clients' full tax payments, causing his clients to underpay the IRS approximately $3,270,566.89 for those tax years. *Id.* Defendant then attempted to conceal that he had paid the IRS less than the full amount of taxes his clients owed by showing his clients false documents purporting to confirm payment of taxes and re-routing IRS notices from his clients' business addresses to PPI's business address. *Id.* On July 26, 2019, Defendant pled guilty to Count One, corruptly obstructing and impeding the due administration of the internal revenue laws in violation of 26 U.S.C. §7212(a), and Counts Two through Eighteen, aiding and assisting in the preparation of materially false income tax returns in violation of 26 U.S.C. §7206(2), of the Information. ECF No. 4.

Prior to Defendant's sentencing, several of Defendant's former clients submitted victim impact statements detailing how their lives and businesses were impacted by Defendant's actions. ECF No. 22. On February 18, 2020, the Court held Defendant's sentencing hearing, at which additional victims provided oral statements to describe the impact of Defendant's conduct on them. ECF No. 25. The Court sentenced Defendant to 52 months in prison with one year of supervised release, recommended Defendant be placed in the Residential Drug Abuse Program ("RDAP") while in the custody of the Bureau of Prisons ("BOP"), and

required Defendant to pay $3,270,566.89 in restitution, with a special assessment of $1,800.  ECF No. 27 at 2-3, 6.  Defendant filed the instant Motion for Compassionate Release on May 13, 2020, and it was docketed on June 8, 2020.  ECF No. 29.  As of the date of the filing of this Memorandum, Defendant has served five months of his 52-month sentence.

## II.   DISCUSSION

Defendant Hannigan moves the Court to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(l)(A)(i) "for extraordinary and compelling reasons."  ECF No. 29 at 1.  Under 18 U.S.C. § 3582(c)(l)(A)(i), a court is permitted to modify a term of imprisonment after it has been imposed only under certain conditions, including when (1) "extraordinary and compelling reasons warrant such a reduction," (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) "after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable."  18 U.S.C. § 3582(c); *see also United States v. Rodriguez*, 2020 WL 1627331, at *2-3 (E.D. Pa. Apr. 1, 2020).  A defendant filing a motion under § 3582(c)(1)(A)(i) must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or have experienced a "lapse

3

of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).[1]

### A. *Defendant's Motion for Compassionate Release*

In Defendant's Motion for Compassionate Release, Defendant contends that he is particularly vulnerable to COVID-19 because he "suffer[s] from hypertension and diabetes and . . . latent tuberculosis," in addition to "advanced cardiovascular disease (3 stent procedures in 2006) and sleep apnea." ECF 29 at 1. Defendant contends that, as of the filing of his motion, there were three staff members with confirmed cases of COVID-19 at the Federal Detention Center ("FDC") in Philadelphia, where Defendant is currently housed. *Id*. Defendant contends that "[d]ue to prison conditions," this number was expected to increase. *Id.*

Defendant states that he was diagnosed with latent tuberculosis in February 2020 at the FDC. *Id*. at 2. Defendant states that he "initially declined medication until [he] arrived at his designated camp [in] Lewisburg, PA." *Id*. However, Defendant states that when he realized transportation was halted within the BOP, he requested to start the medication but received no response. *Id*. Defendant asserts that he had also contacted the BOP medical staff twice to report having

---

[1] The government does not contest that Defendant Hannigan satisfied this step. *See generally* ECF No. 30.

4

heart palpitations and chest pain, but he received no response. *Id*.  Defendant states that his medical conditions are currently "unmanaged." *Id*. at 3.

Defendant asserts that the FDC "is currently 'locked down' 23 hours per day for the purpose of social distancing" and that "[t]he lockdown prevents [him] from doing any type of cardiovascular exercise, critical to maintaining healthy blood sugar levels and cardiovascular health." *Id.* at 2.  Defendant claims that his underlying health conditions constitute extraordinary and compelling circumstances because the Center for Disease Control ("CDC") data reflects mortality rates for each of his conditions "combined with contracting COVID-19" as: cardiovascular disease (13.2%), diabetes (8.4%), and hypertension (8.0%). *Id.* at 3.  Defendant asserts that his release plan would include residing with his wife and children and relying on his wife for financial support and medical coverage. *Id.*

B. *The Government's Response in Opposition*

Although the government "acknowledges that [Defendant] meets the threshold test of a medical condition defined in" application note 1(A) of section 1B1.13 of the Sentencing Guidelines, which explains certain situations in which "extraordinary and compelling reasons" exist, the government maintains that Defendant is not entitled to release under § 3582(c)(1)(A)(i) based on a consideration of the § 3553(a) factors.  ECF No. 30 at 17 n.7.  The government

responds, first, that Defendant "was diagnosed with coronary artery disease in June of 2006, with hypertension in June of 2006, and with diabetes in September of 2012" and, therefore, "the Court was well aware of Hannigan's medical needs when imposing his sentence of February 14, 2020." *Id*. at 3.  Second, the government contends that "a review of Hannigan's medical records undermine[s] his claims that the FDC is ignoring his medical needs," stating that that his "blood sugar level was checked 40 times between the dates of May 21, 2020, and June 3, 2020" and that "the FDC is carefully monitoring his heart issues." *Id.* at 7.

Additionally, the government states that Defendant's medical records indicate FDC medical staff treated a skin rash that Defendant reported in March, and that "[i]t strains credulity to believe a medical professional would immediately treat his skin condition, but ignore his complaint regarding chest pain and fail to document that complaint." *Id.*  Furthermore, the government asserts that Defendant's medical records reflect he had a consultation on May 20, 2020 wherein Defendant reported his chest pains. *Id*. at 8.  The government emphasizes that "the FDC is repeatedly communicating with Hannigan about the status of his overall health . . . undermin[ing] Hannigan's *pro se* claims that his medical complaints are being ignored." *Id*.

C. *Defendant's Reply*

In Defendant's reply letter to the government's response, Defendant reiterates that his "medical conditions are not well controlled within BOP custody" and states that "there is no testing of inmates at FDC-Phila, even people/inmates presenting with symptoms often times aren't tested for COVID-19." ECF No. 32 at 2-4.  Defendant contends that the government's response "completely ignores [his] A1C" level, reiterating that his A1C (blood sugar) level was 9.8, while a normal result is 6 or less.  *Id.* at 4.

Defendant also contends that "it seems clear . . . that the Court never considered [him] a danger" because he was "free on bond and under immediate supervision of pretrial services officer Mr. Christopher Narcise all the way up to sentencing."  *Id.* at 6-8.  Defendant states that he "relapse[d] and voluntarily entered treatment" while on bond and since has been "almost 11 months sober." *Id.* at 7.  Furthermore, Defendant contends that his future participation in RDAP could reduce his sentence to as little as 15 months.  *Id*. at 2.

D. *Analysis*

As stated previously, under 18 U.S.C. § 3582(c)(l)(A)(i), a court is permitted to modify a term of imprisonment after it has been imposed only under certain conditions, including when (1) "extraordinary and compelling reasons warrant such a reduction," (2) "such a reduction is consistent with applicable policy

7

statements issued by the Sentencing Commission," and (3) "after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable."  18 U.S.C. § 3582(c); *see also Rodriguez*, 2020 WL 1627331, at *2-3.

Because the government "acknowledges that [Defendant] meets the threshold test of a medical condition defined in" application note 1(A) of section 1B1.13 of the Sentencing Guidelines, this Court need not reach the legal issue of whether a court, at present, has authority to determine "extraordinary and compelling reasons" apart from those described in the Sentencing Commission's policy statement.[2]  ECF No. 30 at 17 n.7.

---

[2] Before the First Step Act was enacted in 2018, "only the Director of the Bureau of Prisons . . . could file . . . 'compassionate-release motions'" under § 3852(c)(1)(A)(i).  *Rodriguez*, 2020 WL 1627331, at *2. Furthermore, Congress did not define "extraordinary and compelling reasons" in § 3582 and instead directed the Sentencing Commission to define the term. *Id*. at 3.  The Sentencing Commission issued a policy statement providing three specific examples of "extraordinary and compelling reasons," and a fourth "catchall" provision. *Id*. (citing U.S.S.G. § 1B1.13 cmt. n.1(A)-(D)). Then, in 2018, "the First Step Act amended § 3582(c)(1)(A) to allow prisoners to directly petition courts for compassionate release, removing the BOP's exclusive 'gatekeeper' role." *Id*. at *2.  However, "[t]he Commission has not updated its policy statement to account for the changes imposed by the First Step Act, and the policy statement is now clearly outdated." *Id*. at * 3; *see also United States v. Pawlowski*, 2020 WL 2526523, at *5 n.8 (E.D. Pa. May 18, 2020), aff'd, 2020 WL 3483740 (3d Cir. June 26, 2020) ("The Sentencing Commission has not updated the policy statement to account for this statutory change, and the policy statement is clearly outdated in some respects, as it continues to track the former statutory language permitting a court to reduce a term of imprisonment only '[u]pon motion of the Director of the Bureau of Prisons.'" (quoting U.S.S.G. § 1B1.13 & cmt. n.4)).  Therefore, many district courts have considered whether courts are required to adhere to the definition of "extraordinary and compelling reasons" as provided in the Sentencing Commission's "clearly outdated" policy statement, or if courts may separately determine when there are "extraordinary and compelling reasons" to reduce a term of imprisonment under §3582(c)(1)(A)(i).  *Rodriguez*, 2020 WL 1627331, at *4 (collecting cases).  A majority of these courts have found that courts may conduct an independent assessment to determine whether "extraordinary and compelling reasons" exist.  *Id*.  These courts have concluded that the Sentencing Commission's pre-First Step Act policy statement "provides helpful guidance, [but] … does not constrain [a court's]

8

Therefore, the Court must consider the Section 3553(a) factors to determine whether Defendant is entitled to a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  The Section 3553(a) factors relevant at this stage are: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed-- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; . . . and (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Rodriguez*, 2020 WL 1627331, at *11-12 (quoting 18 U.S.C.S. § 3553(a)).  The Court may also consider the amount of time already served.  *United States v. Pawlowski*, 2020 WL 2526523, at *7 n.11 (E.D. Pa. May 18, 2020), aff'd, 2020 WL 3483740 (3d Cir. June 26, 2020) ("The amount of the

---

independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)." *Rodriguez*, 2020 WL 1627331, at *4 (alteration in original) (citation omitted) (collecting cases). "A smaller number of courts have concluded that the Sentencing Commission's policy statement prevents district courts from considering any 'extraordinary and compelling reasons' outside of those listed in subsections (A)-(C) of the policy statement." *Id*.  However, as the government concedes that "defendant's conditions of diabetes and coronary heart disease meet [the Sentencing Commission's] test," the Court need not consider this issue.  ECF No. 30 at 17.

9

sentence a defendant has served, and the amount that remains to be served, are relevant to a court's consideration of the § 3553(a) factors.").

In *United States v. Shulick*, the Court denied the defendant's motion for compassionate release where the defendant had served 19 months of a 60-month sentence. 2020 WL 3250584, at *4-5 (E.D. Pa. June 16, 2020). The Court stated that, in considering § 3553(a) factors, it "cannot ignore the seriousness of defendant's convictions for embezzlement, fraud, and filing false tax returns." *Id*. at 5. The Court found that because Defendant's "crimes continued over a period of time and were not an aberration," and because "there is still a substantial amount of time remaining in defendant's 60-month sentence," that "[r]eleasing defendant now would cut his current sentence by well over half and would not appropriately reflect the nature and circumstances of his offenses, promote just punishment, or afford adequate deterrence to criminal conduct." *Id*. (citing § 3553(a)).

Similarly, in *Pawlowski*, the defendant moved for compassionate release from a 180-month sentence after 19 months. 2020 WL 2526523 at *7. The Court did not find that the 3553(a) factors warranted such a substantial reduction in the defendant's sentence since, "[i]n contrast to many of the cases in which courts have granted compassionate release during the COVID-19 pandemic, [the defendant] has served only a small fraction of his sentence to date." *Id*. The Court

additionally found that "[a]lthough non-violent, [the defendant's] crimes were extraordinarily serious, involving abuse of a position of public trust." *Id*.

In contrast, the Court in *Rodriguez* granted the defendant's motion for compassionate release based on the defendant's underlying health conditions that rendered him particularly vulnerable to COVID-19, that prison was a particularly dangerous place for the defendant, and the fact that the defendant had served 15.5 years of a 17-year sentence and had "shown commendable rehabilitation while in prison." 2020 WL 1627331, at *7. However, the Court clarified that "[n]one of these reasons *alone* is extraordinary and compelling" yet "[t]aken together. . . they constitute reasons for reducing his sentence." *Id*. (alteration in original).

In this case, as of the date of this memorandum, Defendant Hannigan has served only five months of a 52-month sentence.[3] Although Defendant's crimes were non-violent, as detailed previously, they impacted a significant number of people and smaller businesses. Many former clients submitted lengthy victim impact statements or made passionate oral statements at Defendant's sentencing hearing to describe and emphasize the harm Defendant caused to their businesses and lives. Additionally, Defendant's crimes took place over a number of years. Defendant continued to conceal, and therefore prolong, his crimes by showing his

---

[3] Defendant's projection that he could be released in "as little as 15 months" based on his "RDAP credits and other credits" is simply speculation without any support. ECF No. 32 at 2.

11

clients false documents stating that their taxes were paid and redirecting IRS mail from his clients' addresses to his own business address, showing that Defendant's actions were not an aberration.  This Court cannot justify reducing Defendant's sentence to a time-served sentence of five months when, only five months ago, this Court carefully considered the § 3553(a) factors and sentenced Defendant to a term of imprisonment of 52 months.  Defendant's contention that his medical conditions are not being well-managed in the BOP, especially in light of the number of times both Defendant and the government note that Defendant has seen medical personnel since arriving at the FDC, is not sufficient to outweigh the Court's consideration of the § 3553(a) factors.

Therefore, the Court finds the § 3553(a) factors dispositive in this case.  Taking all relevant facts into account, reducing Defendant's sentence to only five months from 52 months would not appropriately reflect the nature and circumstances of his offenses, promote just punishment, or afford adequate deterrence to criminal conduct.  *See* 18 U.S.C. § 3553(a).  As the § 3553(a) factors do not support a reduction in sentence, Defendant is not entitled to compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

## III. CONCLUSION

For the forgoing reasons, Defendant Myles Hannigan's Motion for Compassionate Release is denied. An appropriate order will follow.

                                                                  **BY THE COURT:**

**DATED:  July 16, 2020**                                 **/s/ Chad F. Kenney**

                                                                  **CHAD F. KENNEY, JUDGE**