IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| | : | NO. 19-373 |
| v. | : | |
| | : | |
| MYLES HANNIGAN | : | |
| | : | |

## MEMORANDUM

Defendant Myles Hannigan *pro se* brings this Motion for Reconsideration (ECF No. 37) of this Court's decision denying his Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(l)(A)(i) (ECF No. 33, 34). Mr. Hannigan's Motion argues that his medical conditions have worsened since this Court denied his request for release in July 2020 and that, due to that change of circumstances and in light of the ongoing COVID-19 pandemic, his medical conditions would be best treated at home rather than in prison. *See* ECF No. 37 at 2. He further argues that new case law has "emerged or come to [his] attention" which compels the Court to place more emphasis on the need for the sentence imposed to provide the defendant with needed medical care in the most effective manner. *Id.*; *see also* 18 U.S.C. § 3553(a)(2)(D). The Government opposes Defendant's Motion arguing that, because Mr. Hannigan has been fully vaccinated against COVID-19, his medical conditions no longer present an "extraordinary and compelling reason" to support compassionate release. *See* ECF No. 42 at 1.

1

Because Mr. Hannigan's risk of severe outcome from COVID-19 has been reduced by the Moderna vaccine and because the § 3553(a) sentencing factors continue to support his sentence, Mr. Hannigan's Motion for Reconsideration is DENIED.

## I. BACKGROUND

A. <u>Mr. Hannigan's Criminal History</u>

The Court's July 16, 2020 Memorandum (ECF No. 33) details Mr. Hannigan's criminal history, which will be only briefly summarized here. On July 26, 2019 Mr. Hannigan pleaded guilty to Count 1: Obstructing the Due Administration of the Internal Revenue Service (IRS), in violation of 26 U.S.C. § 7212(a), and to Counts 2 through 18: Aiding and Assisting the Filing of False Federal Tax Returns, in violation of 26 C.S.C. § 7206(2). ECF No. 10 at 1. These charges arose from Mr. Hannigan's work at the company Payroll Professionals, Inc. ("PPI") which he owned and operated. *Id.*

PPI purported to offer payroll services to small and medium-sized businesses whereby PPI would issue payroll checks to employees and then remit the taxes due on those wages to the appropriate federal, state, and local governments. ECF No. 1. In reality, Mr. Hannigan failed to properly forward his clients' full tax payments, causing those clients to underpay the IRS approximately $3,270,566.89 over several years. *Id.* Mr. Hannigan attempted to conceal his

scheme by showing his clients false documents claiming to confirm tax payments and rerouting IRS notices from those clients' business addresses to PPI's own address. *Id.*

The Court sentenced Mr. Hannigan to 52 months in prison with one year of supervised release and recommended he be placed in the Residential Drug Abuse Program ("RDAP") while in the custody of the Bureau of Prisons ("BOP"). ECF No. 27 at 2. The Court also required Mr. Hannigan pay $3,270,566.89 in restitution with a special assessment of $1,800. *Id.* at 6.

Mr. Hannigan is currently incarcerated at USP Lewisburg. To date, he has served 13 months of his 52-month sentence.

B.  Mr. Hannigan's Health History

As noted in the Court's July 2020 Memorandum (ECF No. 33), Mr. Hannigan has been diagnosed with several medical conditions including hypertension, diabetes, latent tuberculosis, advanced cardiovascular disease (requiring 3 stent procedures in 2006), and sleep apnea. Mr. Hannigan is a Chronic Care Clinic patient and receives regular medical care from BOP Health Services. *See* ECF 43. Mr. Hannigan's diabetes recently caused a bone infection in the second toe of his right foot. As a result, his toe was partially amputated in January 2021. *See* ECF No. 43 at 19.

Mr. Hannigan received his first dose of the Moderna COVID-19 vaccine on January 28, 2021 and his second dose on February 25, 2021. ECF No. 43 at 189. He submitted to the vaccine voluntarily. ECF No. 37 at 5. According to CDC guidelines, he is now considered "fully vaccinated" against the COVID-19 virus.[1]

## II.   DISCUSSION

A litigant may file a Motion for Reconsideration "to correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)). To that end, a party seeking reconsideration must show either "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010). "Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." *Rossi v. Schlarbaum*, 600 F.Supp.2d 650, 670 (E.D. Pa. 2009).

A. <u>Defendant's Motion for Reconsideration</u>

---

[1] *See Guidance for Fully Vaccinated People*, CENTERS FOR DISEASE CONTROL AND PREVENTION (updated Apr. 2, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated-guidance.html ("For the purposes of this guidance, people are considered fully vaccinated for COVID-19 ≥2 weeks after they have received the second dose in a 2-dose series (Pfizer-BioNTech or Moderna)").

In his Motion for Reconsideration, Mr. Hannigan argues that "quite a few circumstances have changed" since this Court's July 2020 denial of his request for early release and that those new circumstances justify reducing his sentence to 18 months of home confinement and 1 year of supervised release. ECF No. 37 at 1–2.

Mr. Hannigan first notes that he has been transferred from FDC Philadelphia to USP Lewisburg and has enrolled in the Residential Drug Abuse Program ("RDAP"). ECF No. 37 at 1. He enrolled in the program in January 2021 and expects to complete it in October 2021. *Id.* at 7. Mr. Hannigan asserts that he will be given an additional 12-month credit towards his sentence upon completion of this program. *Id.*[2]

Next, Mr. Hannigan informs the Court that his "diabetes has worsened resulting in a bone infection in [his] second toe on [his] right foot" and that this infection "led to a partial amputation of the toe." ECF No. 37 at 1. The Motion for Reconsideration claims that this particular infection, called osteomyelitis, is often caused by the Staph A bacteria that is prevalent in prisons. *Id.* at 6. Mr. Hannigan argues that the COVID-19 pandemic's impact on hospital capacity impeded his access to care for this infection. *Id.* He goes on to suggest that his "sleep apnea condition continues untreated by BOP medical staff." ECF No. 37 at 2. Mr.

---

[2] Mr. Hannigan projects that with RDAP credits and additional credits for good conduct he could be released from BOP custody in 12 or fewer months. ECF No. 37 at 7. This projection is speculation and will not factor into the Court's analysis.

Hannigan was diagnosed with that condition before his incarceration and had previously been issued a CPAP machine. *Id.* at 8. He alleges that "[t]he BOP medical staff has never tested [him] for sleep apnea, nor have they issued [him] a CPAP device." *Id.* He claims that sleep apnea places a strain on his heart and that his incarceration is the longest period that he has gone without a breathing apparatus while sleeping. *Id.*

Mr. Hannigan then states without support that "greater than 1 in 4 inmates [at USP Lewisburg] have tested positive for COVID-19" and that "[n]ationally, prison staff are overwhelmingly refusing vaccination further jeopardizing inmates." ECF No. 37 at 1–2. As of filing, there are two active COVID-19 case in USP Lewisburg and 246 inmates have recovered from the disease. *See* COVID-19 Inmate Test Information, BUREAU OF PRISONS, https://www.bop.gov/coronavirus/index.jsp (accessed Apr. 20, 2021).

Finally, Mr. Hannigan alleges that new case law has "emerged or come to [his] attention" that states the Court should consider "the need to provide medical care in the most effective way possible" when determining an appropriate sentence. ECF No. 37 at 3; *see* 18 U.S.C. § 3553(a)(2)(D). His Motion includes reference to four such cases from various jurisdictions.

The first is *United States v. Carpenter*, 2:14-CR-00309-TLN, 2020 WL 5851129 (E.D. Cal. Sept. 30, 2020) in which the court initially denied the

6

defendant's request for compassionate release but later granted on a motion for reconsideration after observing that cases within defendant's facility had increased and that the defendant was herself diagnosed with COVID-19. The second is *United States v. Belanger*, 1:15-CR-00072-JDL, 2020 WL 5351028 (D. Me. Sept. 4, 2020), which granted release for a defendant at risk of severe COVID after he had served approximately 30% of a 132-month sentence. The third is *United States v. Grant*, 16-30021-001, 2020 WL 4036382 (C.D. Ill. July 17, 2020) which specifically recognized that osteomyelitis may pose a serious health risk despite not being specifically named by the CDC as a COVID-19 risk factor. The final case is *United States v. Pabon*, 458 F. Supp. 3d 296, 299 (E.D. Pa. 2020) which granted defendant compassionate release after serving 14 months of a 46-month sentence because "continued incarceration might interfere with his ability to get needed medical care" for hypertension, diabetes, and other medical conditions.

Mr. Hannigan's Motion requests his sentence be reduced to 18 months of confinement at his home in Newtown Square, Pennsylvania followed by 1 year of supervised release. ECF No. 37 at 12. He would also submit to outpatient alcohol treatment a minimum of 3-days per week and comply with all rules and regulations as determined by his probation officer. *See id.*

    B.  <u>The Government's Response in Opposition</u>

The Government's Response in Opposition argues that Mr. Hannigan's Motion should be denied "as Hannigan has been vaccinated against COVID-19, and no longer presents an 'extraordinary and compelling reason' allowing consideration for compassionate release under 18 U.S.C. § 3582(c)(l)(A)(i)." ECF No. 42 at 1. The Government explains that the relevant policy guidelines allow a Court to grant compassionate release where the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* (quoting U.S.S.G. § 1B1.13 app. note 1(A)(ii)). When Mr. Hannigan filed his initial Motion for Compassionate Release, the Government acknowledged that an inmate presenting with his health conditions "may be less able to protect himself against an unfavorable outcome from the [COVID-19] virus." *Id.* at 2. However, the Government argues that those circumstances no longer exist because Mr. Hannigan has received both doses of the Moderna vaccine. *Id.*

The Government now argues that vaccinated inmates, like Mr. Hannigan, cannot present an extraordinary circumstance for release "based on the virus alone." *Id.* at 4. Without the threat of the virus, Mr. Hannigan's ailments are the types of conditions "commonly addressed in the prison setting" and "none 'substantially diminishes the ability of the defendant to provide self-care within the

environment of a correctional facility.'" *Id.* So, in the Government's view, the Court's present analysis should be guided by decisions made prior to the advent of the pandemic. *Id.* at 5–6 (listing cases).

Regarding the § 3553(a) sentencing factors, the Government argues that the only "material change" since the Court denied Mr. Hannigan's Motion for Reconsideration is that Mr. Hannigan "has now served 13 months (and also has credit for good conduct time of 2 months)." *Id.* at 8. The Government maintains that the time Mr. Hannigan has already served remains insufficient to address Mr. Hannigan's crimes. *Id.*

### C. Defendant's Response to Government's Opposition to Reconsideration of Compassionate Release

In a response to the Government's Response to Opposition (ECF No. 55) Mr. Hannigan restates many of the points from his earlier Motion. He argues that the Court's original 52-month sentence was "much more punitive than intended" in light of the COVID-19 pandemic and the associated "lockdowns, terminated visitation, and mental strife." *Id.* at 3. Mr. Hannigan maintains that, when evaluating the § 3553(a) sentencing factors, the Court is required to consider "where medical care can be most effectively delivered, in prison or at home." *See id.* He argues that his sleep apnea and recent partial amputation of his toe are the type of medical conditions that cannot be adequately treated in a prison setting. *See id.* at 4.

Finally, while acknowledging that rehabilitation alone is not grounds for a sentence reduction, Mr. Hannigan argues that rehabilitation combined with in-prison programming may support granting compassionate release. ECF No. 55 at 5. To support that point, he notes that he has completed half of his Residential Drug Abuse Program, that he works as a tutor helping other inmates earn their GEDs, and that he attends weekly group therapy. *Id.* Mr. Hannigan also argues that the fact that he is housed in a minimum-security camp facility is evidence that he is not a danger to the community. *Id.* Because his current facility has "no fences, physical barriers, armed guards, or metal detectors," Mr. Hannigan argues that transfer to home confinement will be "lateral in term [sic] of custody." *Id.* at 5–6.

### D. Victim Impact Statements

Prior to Mr. Hannigan's sentencing, several of his former clients submitted victim impact statements detailing how their lives and businesses were negatively impacted by his crimes. *See* ECF No. 22. The Court provided another opportunity here for those victims to express their opinions on Mr. Hannigan's request for early release. At least ten of those clients wrote in to express their opposition to Mr. Hannigan's request (ECF No. 48). Several of Mr. Hannigan's victims said that they are still dealing with penalties, interest and other issues with the IRS stemming from his crimes. ECF No. 48 at 1–4. One victim, the Bernardine Franciscan Sisters

Center, stated that is has taken over four years for their finances to recover from Mr. Hannigan's theft of funds for their food pantry. *Id.* at 4.

E. Character References

The Court received two character letters supporting Mr. Hannigan's compassionate release. ECF Nos. 49 and 53. These letters urge the Court to grant Mr. Hannigan's motion because of his medical conditions, his successful completion of alcohol treatment programs, and his close relationships with his family. *See id.*

F. Analysis

As stated, a Motion for Reconsideration must rely on one of the following: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010).

Under 18 U.S.C. § 3582(c)(l)(A)(i), a court is permitted to modify a term of imprisonment after it has been imposed only under certain conditions, including when extraordinary and compelling reasons warrant such a reduction and after considering the sentencing factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c); *see also United States v. Rodriguez*, 2020 WL 1627331, at *2–3 (E.D. Pa. Apr. 1, 2020) 3. The Court's July 2020 Memorandum (ECF No. 33) held that, although Mr. Hannigan's medical conditions presented an "extraordinary and

compelling reason" to reduce his sentence, an evaluation of the § 3553(a) sentencing factors weighed against granting release. Though Mr. Hannigan's Motion for Reconsideration has presented some new information regarding changes in his health history, that new evidence does not compel this Court to change its prior decision that consideration of the § 3553(a) sentencing factors requires that he remain detained.

### a. Extraordinary and Compelling Reasons for Release

In its July 2020 Memorandum (ECF No. 33), the Court agreed that Mr. Hannigan suffered from several medical conditions that, when combined with the threat of serious illness from COVID-19, constituted an extraordinary and compelling reason for release. Mr. Hannigan's present Motion for Reconsideration reiterates that argument and further claims that his recent toe infection and partial amputation presents additional evidence supporting release that this Court could not have considered in its earlier opinion. ECF No. 37 at 6. In its Response in Opposition, the Government argues that, because Mr. Hannigan has received both doses of the Moderna COVID-19 vaccine, those health conditions no longer present an extraordinary and compelling reason for release. ECF No. 42 at 2.

The Court is persuaded by the Government's argument that inoculation with an effective COVID-19 vaccine lessens the risk of serious illness or death from a COVID-19 infection. According to the CDC, the Moderna vaccine was shown to

be 94.1% effective at preventing confirmed COVID-19 illness in clinical trials.[3] Each of the authorized COVID-19 vaccines are highly effective at protecting vaccinated people against symptomatic and severe COVID-19.[4] To that end, the CDC has advised that fully vaccinated individuals may safely refrain from quarantine and testing following a known exposure to COVID-19 and that such individuals may safely visit with other fully vaccinated people indoors without wearing masks or physical distancing.[5] The Court is aware that the COVID-19 situation is always-changing and that it is unclear how emerging COVID-19 variants will alter vaccine efficacy over time. However, at the time of writing, CDC guidance suggests that Mr. Hannigan has significant protection against serious illness from COVID-19 as a result of his vaccination.

Other courts in the Third Circuit have agreed that the protection provided by an authorized COVID-19 vaccination reduces the risk of serious illness from COVID-19 to such a degree that the threat of the pandemic alone cannot present an extraordinary and compelling reason for compassionate release. *E.g., United States. v. Singh*, 4:15-CR-00028-11, 2021 WL 928740, at *2 (M.D. Pa. Mar. 11,

---

[3] *Moderna COVID-19 Vaccine Overview and Safety*, CENTERS FOR DISEASE CONTROL AND PREVENTION (updated Apr. 5, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Moderna.html.

[4] *Guidance for Fully Vaccinated People*, CENTERS FOR DISEASE CONTROL AND PREVENTION (updated Apr. 2, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated-guidance.html.

[5] *Id.*

2021) (concluding that defendant's receipt of the Moderna COVID-19 vaccination mitigates the risk of illness to such an extent that COVID-19 no longer presents an extraordinary and compelling reason to grant release); *United States v. Roper*, CR 16-335, 2021 WL 963583, at *4 (E.D. Pa. Mar. 15, 2021) (finding that the risk of severe illness to a defendant who has been inoculated with the Moderna vaccine is not an extraordinary and compelling reason for release); *United States v. Stiver*, CR 17-64, 2021 WL 1110593, at *1 (W.D. Pa. Mar. 23, 2021) (finding that, given defendant's Pfizer vaccination, there was no extraordinary or compelling reason to release a 72 year old inmate who suffers from type II diabetes).

     Mr. Hannigan also seems to argue that the Court is compelled to follow the Second Circuit case *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020), which acknowledged that, under the First Step Act, courts are not bound by the extraordinary and compelling reasons for release enumerated in U.S.S.G. 181.13 and may consider any extraordinary and compelling reasons when evaluating whether release is warranted. ECF No. 55 at 2. This Court's July 2020 Memorandum (ECF No. 33) discussed the First Step Act's impact on Motions for Compassionate Release in a lengthy footnote and acknowledged that "the Sentencing Commission's pre-First Step Act policy statement 'provides helpful guidance, [but] . . . does not constrain [a court's] independent assessment' of whether 'extraordinary and compelling reasons' warrant a sentence reduction

14

under § 3582(c)(1)(A)." ECF No. 33 at 8–9 (citing *Rodriguez*, 2020 WL 1627331, at *4). This Court is aware of its authority to evaluate Compassionate Release Motions in light of the First Step Act and nothing in *Brooker* compels that the Court change its approach.

To the extent that Mr. Hannigan's recent toe amputation and sleep apnea would have presented an extraordinary and compelling reason for release when combined with a COVID-19 infection, the Court finds that that risk has been significantly reduced by his recent COVID-19 vaccination. Absent that heightened risk, Mr. Hannigan's sleep apnea and risk of infection are not sufficiently extraordinary and compelling to warrant compassionate release.

### b. § 3553(a) Factors

Regardless, the Court's July 2020 Memorandum (ECF No. 33) did not rely solely on whether Mr. Hannigan set out an extraordinary and compelling reason for release but instead turned on the Court's consideration of the relevant § 3553(a) sentencing factors. Mr. Hannigan has not presented either an intervening change in controlling law or newly available evidence, nor has he suggested some need to correct a clear error or prevent manifest injustice, that would compel the Court to reconsider its analysis of the § 3553(a) factors.

Mr. Hannigan's Motion for Reconsideration relies on his assertion that new case law has "emerged or come to [his] attention" that compels the Court to

consider "the need to provide medical care in the most effective way possible" when determining an appropriate sentence. ECF No. 37 at 3. He "points to his medical history and BOP medical files as proof he can more effectively care for himself at home rather than in prison." ECF No. 55 at 3. Though the cases he cites in his Motion were each filed after July 2020, none of them represent a precedential reinterpretation or change to the controlling law which would compel reconsideration. Nor does the Court's choice to not evaluate in detail the need for the sentence to provide Mr. Hannigan with needed medical care in the most effective matter (§ 3553(a)(2)(D)) represent a clear error or manifest injustice. Even if the Court had placed a greater emphasis on § 3553(a)(2)(D) in its July 2020 Memorandum, its result would not have changed.

When determining whether a defendant is entitled to a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) a district court must consider the relevant § 3553(a) factors including: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed-- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) **to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most**

**effective manner**; . . . and (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." ECF No. 33 at 9 (emphasis added). Each of these factors is relevant to the compassionate release analysis and no one factor is dispositive on its own. *See e.g., United States v. Rodriguez*, 451 F. Supp. 3d 392, 401 (E.D. Pa. 2020).

Mr. Hannigan's medical records show that the BOP is equipped to provide, and indeed has provided, significant medical care for his diagnosed conditions. *See* ECF No. 43. As a Chronic Care Clinic patient, Mr. Hannigan receives regular evaluations and treatment by BOP Health Services. Mr. Hannigan has received at least three negative COVID-19 tests while in BOP custody. *See* ECF No. 43 at 214, 217, and 219. BOP Health Services provided Mr. Hannigan with both doses of the Moderna COVID-19 vaccine as well as an influenza vaccine. *See id.* at 189. After it was identified, Mr. Hannigan's toe infection was closely monitored within BOP Health Services and assessed by outside experts. *See id.* at 247–248 (noting that Mr. Hannigan was evaluated at UPMC Albright FootCare and the Geisinger Medical Center Wound Clinic). He has attended at least five appointments with BOP Health Services since that surgery. *See id.* at 1–24.

As Mr. Hannigan's medical conditions appear to be well treated and controlled in his current setting, this Court is convinced that the sentence imposed

does in fact provide Mr. Hannigan with needed medical care in an effective manner in line with the § 3553(a)(2)(D) sentencing factor.

Mr. Hannigan has not presented any evidence to suggest that his medical care in prison has been inadequate beyond a claim that he has not yet received a CPAP machine to treat his sleep apnea. To the Court's knowledge, the CDC has not identified a link between sleep apnea and an increased COVID-19 risk. *See* Underlying Medical Conditions, CENTERS FOR DISEASE CONTROL, (updated Mar. 29, 2021), https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html (sleep apnea is not listed as an underlying condition known to cause a COVID-19 risk). Further, there is no evidence in Mr. Hannigan's medical records to suggest that he has told BOP Health Services he is not currently using a CPAP machine or that his symptoms have worsened as a result. *See* ECF No. 43 (referencing Hannigan's history of sleep apnea and CPAP use at least 12 times). Mr. Hannigan also claims that he is at particular risk for infection because of his diabetes and the prevalence of bacteria in prisons. ECF No. 55 at 4. However, while he may be at risk, Mr. Hannigan has not shown that he cannot effectively mitigate those risks in detention and that, if he were to contract another infection, that it could not be effectively treated in BOP custody.

The remaining § 3553(a) factors continue to support Mr. Hannigan's sentence. Many of Mr. Hannigan's victims wrote to this Court expressing their

opposition to Mr. Hannigan's request for release and describing again the significant harm Mr. Hannigan's crimes caused to their businesses and to their lives. These crimes were conducted over a period of years and were prolonged by efforts to falsify documents and conceal evidence. Taking all relevant facts into account, the Court maintains that reducing Mr. Hannigan's sentence would not appropriately reflect the nature and circumstances of his offense, promote just punishment, or afford adequate deterrence to future criminal conduct. *See* 18 U.S.C. § 3553(a).  As Mr. Hannigan's cited cases do not represent a change in the controlling law and because this Court has concluded that Mr. Hannigan is receiving needed medical care in an effective manner, Mr. Hannigan has not proved that the Court should reconsider its decision to deny compassionate release.

### III.   CONCLUSION

For the forgoing reasons, Defendant Myles Hannigan's Motion for Reconsideration is DENIED.  An appropriate order will follow.

**BY THE COURT:**

**DATED:   4/22/2021**           /s/ Chad F. Kenney

**CHAD F. KENNEY, JUDGE**